**FILED**

AUG 02 2016

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No.   15 CR 656 |
| | ) | |
| v. | ) | Violations: Title 18, United States |
| | ) | Code, Sections 152(2), 1344(1), |
| PETHINAIDU VELUCHAMY, | ) | 1519, and 1542 |
| PARAMESWARI VELUCHAMY, and | ) | |
| ARUN VELUCHAMY, | ) | **SUPERSEDING INDICTMENT** |

**JUDGE WOOD**

**COUNT ONE**     **MAGISTRATE JUDGE SCHENKIER**

The SPECIAL JUNE 2015 GRAND JURY charges:

1.     At times material to this superseding indictment:

        a.     Defendants PETHINAIDU VELUCHAMY and PARAMESWARI VELUCHAMY were husband and wife, and resided in the Chicagoland area.

        b.     ARUN VELUCHAMY and Relative B were the adult children of PETHINAIDU VELUCHAMY and PARAMESWARI VELUCHAMY, and resided in the Chicagoland area.

        c.     As of December 31, 2007, PETHINAIDU VELCUHAMY reported a combined net worth for himself and PARAMESWARI VELUCHAMY of approximately $500,000,000 and reported that they were controlling shareholders in a number of domestic and foreign businesses.

        d.     PETHINAIDU     VELUCHAMY     and     PARAMESWARI VELUCHMAY were the principal shareholders of First Mutual Bancorp of Illinois, Inc., a one-bank holding company, registered to do business in the State of Illinois.

e.     Mutual Bank was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation. Mutual Bank had branches in Illinois, New York, New Jersey, and Texas.

f.     First Mutual Bancorp of Illinois, Inc. was the owner of 100% of the issued and outstanding capital stock of Mutual Bank.

g.     On or around December 1, 2005, and again on or around December 28, 2006, PETHINAIDU VELUCHAMY and PARAMESWARI VELUCHAMY personally obtained a total of approximately $30,000,000 in loans from LaSalle Bank. These personal loans were secured by a pledge of PETHINAIDU VELUCHAMY's and PARAMESWARI VELUCHAMY's shares in First Mutual Bancorp of Illinois, Inc., and were used in connection with Mutual Bank.

h.     On or around February 15, 2008, First Mutual Bancorp of Illinois, Inc. obtained a $10,000,000 loan from LaSalle Bank that was personally guaranteed by PETHINAIDU VELUCHAMY.  The First Mutual loan was used as operating capital for Mutual Bank.

i.     Bank of America was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation. Bank of America succeeded LaSalle Bank and assumed the VELUCHAMYS' personal loans and First Mutual loan owed to LaSalle Bank.

j.     On or around June 30, 2009, PETHINAIDU VELUCHAMY and PARAMESWARI VELUCHAMY defaulted on the personal loans owed to Bank of America, with approximately $29,000,000 in principal owing.

2

k. On or around June 30, 2009, First Mutual Bancorp of Illinois, Inc. defaulted on the First Mutual loan owed to Bank of America with approximately $10,000,000 in principal owing. This default triggered PETHINAIDU VELUCHAMY's personal liability on the First Mutual loan.

l. On or around July 31, 2009, regulators closed Mutual Bank.

m. On or around August 19, 2009, Bank of America filed suit in the United States District Court for the Northern District of Illinois against PETHINAIDU VELUCHAMY and PARAMESWARI VELUCHAMY seeking payment of the sum owed to it in connection with the personal loans, and it filed suit against PETHINAIDU VELUCHAMY and First Mutual Bancorp of Illinois, Inc. seeking payment of the sum owed to it in connection with the First Mutual loan.

n. On or around December 30, 2010, Bank of America secured a judgment against PETHINAIDU VELUCHAMY and PARMESWARI VELUCHAMY in excess of $31,000,000 and secured a judgment against PETHINAIDU VELUCHAMY and First Mutual Bancorp of Illinois, Inc., in excess of $10,000,000.

2. Beginning no later than in or about December 2008, and continuing until at least in or about November 2015, in the Northern District of Illinois, Eastern Division, and elsewhere,

PETHINAIDU VELUCHAMY,
PARAMESWARI VELUCHAMY, and
ARUN VELUCHAMY,

defendants herein, and others known and unknown, devised, intended to devise, and participated in a scheme to defraud Bank of America, which scheme is further

3

described below.

3.     It was part of the scheme that PETHINAIDU VELUCHAMY, PARAMESWARI VELUCHAMY, and ARUN VELUCHAMY engaged in a scheme to defraud Bank of America by fraudulently transferring, concealing, and fraudulently representing the amount of assets owned by PETHINAIDU VELUCHAMY and PARAMESWARI VELUCHAMY, so that they could prevent these assets from being used to satisfy the financial obligations PETHINAIDU VELUCHAMY and PARAMESWARI VELUCHAMY owed to Bank of America. In the course of doing so, defendants made and caused to be made material false statements and submitted and caused to be submitted false documents, which false statements and false documents were designed to hide the amount of assets that PETHINAIDU VELUCHAMY and PARAMESWARI VELUCHAMY owned and controlled.

4.     It was further part of the scheme that PETHINAIDU VELUCHAMY and PARAMESWARI VELUCHAMY transferred cash and other assets to, among others, ARUN VELUCHAMY and Relative B, so that the cash and other assets could not be used to satisfy the obligations owed to Bank of America.

5.     It was further part of the scheme that PETHINAIDU VELUCHAMY and PARAMESWARI VELUCHAMY caused approximately $25,600,000 to be sent from bank accounts in the United States subject to their control to domestic and foreign bank accounts also subject to their control, in order to conceal their ownership and control of these funds from Bank of America.

6.     It was further part of the scheme that PETHINAIDU VELUCHAMY

4

and PARAMESWARI VELUCHAMY opened bank accounts at the State Bank of India and PNC Bank, knowing that these accounts would be used to transfer money to ARUN VELUCHAMY, Relative B, and others in order to conceal the transfers from Bank of America.

7.     It was further part of the scheme that PETHINAIDU VELUCHAMY and PARAMESWARI VELUCHAMY caused approximately $8,495,453 to be transferred to ARUN VELUCHAMY, knowing that the purpose of the transfers was to make assets unavailable to their creditors and knowing that ARUN VELUCHAMY would use the funds as they directed and for their benefit, including to purchase assets from PETHINAIDU VELUCHAMY and PARAMESWARI VELUCHAMY, pay debts owed to PETHINAIDU VELUCHAMY and PARAMESWARI VELUCHAMY, and invest in business entities subject to the defendants' control.

8.     It was further part of the scheme that PETHINAIDU VELUCHAMY and PARAMESWARI VELUCHAMY caused approximately $10,109,648 to be transferred to Relative B, knowing that the purpose of the transfers was to make assets unavailable to their creditors and knowing that Relative B would use the funds as they directed and for their benefit, including to purchase assets from defendants, pay debts owed to defendants, and invest in business entities subject to the defendants' control.

9.     It was further part of the scheme that in or around July 2010, PARAMESWARI VELUCHAMY, Relative B, and Individual A established an entity

5

known as Oakbrook Financial, Inc., for the purpose of transferring funds to and among domestic business entities subject to the control of PETHINAIDU VELUCHAMY, PARAMESWARI VELUCHAMY, ARUN VELUCHAMY, and Relative B, in a manner designed to encumber the debt and equity structures of such business entities for the purpose of making assets unavailable to defendants' creditors.

10. It was further part of the scheme that, in or around December 2010, PETHINAIDU VELUCHAMY caused Relative C and Relative D, and Relative E, to obtain legal judgments against him personally for loans for which he was not personally liable, knowing that the purpose of the legal judgments was to frustrate Bank of America's ability to collect upon its then-anticipated legal judgments, by asserting the judgments held by these relatives as senior to the judgments of Bank of America.

11. It was further part of the scheme that in or around April 2011, PETHINAIDU VELUCHAMY, PARAMESWARI VELUCHAMY, and ARUN VELUCHAMY began to fraudulently characterize to Bank of America the transfer of funds to ARUN VELUCHAMY and Relative B as "indemnification" payments owed to ARUN VELUCHAMY, Relative B, and the Veluchamy Family Foundation, for investments in First Mutual Bancorp of Illinois, Inc., when, in fact, they knew such indemnity obligations did not exist.

12. It was further part of the scheme that on or about April 6, 2011, PETHINAIDU VELUCHAMY, PARAMESWARI VELUCHAMY, and ARUN

6

VELUCHAMY, along with Relative B, caused fraudulent Indemnity Agreements to be provided to Bank of America, which purported to document agreements whereby PETHINAIDU VELUCHAMY and PARAMESWARI VELUCHAMY agreed to indemnify ARUN VELUCHAMY and Relative B, and the Veluchamy Family Foundation against losses for investments in First Mutual Bankcorp, when defendants knew that such agreements did not in fact exist, and caused the phony Indemnity Agreements to be created to fraudulently characterize the transfer of funds to ARUN VELUCHAMY and Relative B.

13.    It was further part of the scheme that, on or around April 13, 2011, PETHINAIDU VELUCHAMY testified at a deposition as part of the district court litigation, and stated under oath that funds transferred to ARUN VELUCHAMY and Relative B were on account of indemnity obligations, and that the computer he had used to create a certain document dated September 30, 2010, relating to such payments, had crashed as a result of a snowstorm and was previously replaced, when, in fact, PETHINAIDU VELUCHAMY knew that the transfers to ARUN VELUCHAMY and Relative B were not on account of any indemnity obligations and that he had not previously replaced his computer after a snowstorm, and that the funds had been transferred to ARUN VELUCHAMY and Relative B to conceal their existence from Bank of America.

14.    It was further part of the scheme that, on or around April 25, 2011, PETHINAIDU VELUCHAMY caused a computer in his home, and two computers used by himself and PARAMESWARI VELUCHAMY at a business office, to be

replaced, for the purpose of concealing information regarding the creation of documents used to fraudulently characterize to Bank of America the transfer of funds to ARUN VELUCHAMY and Relative B.

15.   It was further part of the scheme that, on or around April 27, 2011, PARAMESWARI VELUCHAMY testified at a deposition as part of the district court litigation, and stated under oath that she and PETHINAIDU VELUCHAMY transferred funds to ARUN VELUCHAMY and Relative B on account of indemnity obligations, when, in fact, PARAMESWARI VELUCHAMY knew such indemnity obligations did not exist and that the funds had been transferred to conceal their existence from Bank of America.

16.   It was further part of the scheme that, on or around May 4, 2011, ARUN VELUCHAMY testified at a deposition as part of the district court litigation, and stated under oath that the documents recounting indemnity obligations in his favor evidenced real obligations, and were executed on or around the dates recited therein, when, in fact, ARUN VELUCHAMY knew that the documents did not evidence real obligations, and were not executed on or around the dates recited therein, but were created to fraudulently characterize the transfer of funds from PETHINAIDU VELUCHAMY and PARAMESWARI VELUCHAMY to ARUN VELUCHAMY.

17.   It was further part of the scheme that in or around July 2011 PETHINAIDU VELUCHAMY and PARAMESWARI VELUCHAMY attempted to conceal the scheme by causing Individual B, Individual C, and Individual D, all employees of business entities subject to defendants' control, to collect and destroy

8

documents for years prior to 2008.

18.     It was further part of the scheme that in or around July 2011 PETHINAIDU VELUCHAMY attempted to conceal the scheme by causing Individual C and Individual D to delete electronic records related to the financial histories of certain business entities.

19.     It was further part of the scheme that on or around July 3, 2011, ARUN VELUCHAMY removed records from the premises of a business subject to defendants' control, for the purpose of concealing the scheme.

20.     It was further part of the scheme that on or around July 7, 2011, ARUN VELUCHAMY caused approximately $474,320 to be transferred for the benefit of PARAMESWARI VELUCHAMY, from a business entity subject to defendants' control, in violation of a district court prohibition against such transfer.

21.     It was further part of the scheme that on or around July 8, 2011, ARUN VELUCHAMY caused Individual E to delete certain electronic data, for the purpose of concealing the scheme.

22.     It was further part of the scheme that on or around August 14, 2011, PETHINAIDU VELUCHAMY, PARAMESWARI VELUCHAMY, and ARUN VELUCHAMY caused voluntary Chapter 11 bankruptcy petitions to be filed in the United States Bankruptcy Court for the District of Delaware to conceal the nature and extent of the scheme, and to limit the liability of ARUN VELUCHAMY and Relative B for the transfers of property they received from PETHINAIDU VELUCHAMY and PARAMESWARI VELUCHAMY.

9

23. It was further part of the scheme that on or around August 16, 2011, PETHINAIDU VELUCHAMY and PARAMESWARI VELUCHAMY caused a joint Chapter 7 bankruptcy petition to be filed in the United States Bankruptcy Court for the Northern District of Illinois, captioned *In re Veluchamy*, case no. 11 B 33413, to conceal the nature and extent of the scheme, and to limit the liability of ARUN VELUCHAMY and Relative B for the transfers of property they received from PETHINAIDU VELUCHAMY and PARAMESWARI VELUCHAMY.

24. It was further part of the scheme that on or around September 11, 2011, PETHINAIDU VELUCHAMY, PARAMESWARI VELUCHAMY, and ARUN VELUCHAMY caused an additional voluntary Chapter 11 bankruptcy petition to be filed in the United States Bankruptcy Court for the District of Delaware to conceal the nature and extent of the scheme, and to limit the liability of ARUN VELUCHAMY and Relative B for the transfers of property they received from PETHINAIDU VELUCHAMY and PARAMESWARI VELUCHAMY.

25. It was further part of the scheme that PETHINAIDU VELUCHAMY and PARAMESWARI VELUCHAMY made sworn representations during proceedings in their personal bankruptcy case that they transferred their equity interests in certain business enterprises operating in India to relatives, including the enterprises known as Versatile Card Technology Private Limited, Sri Parameswari Spinning Mills Private Limited, and Jaya Velu Spinning Mills Private Limited, when, in fact, PETHINAIDU VELUCHAMY and PARAMESWARI VELUCHAMY knew that PETHINAIDU VELUCHAMY retained control over these businesses

10

through family members who served as nominal transferees.

26.     It was further part of the scheme that PETHINAIDU VELUCHAMY and PARAMESWARI VELUCHAMY made various false representations in their personal bankruptcy case in an attempt to conceal the nature and extent of the scheme, and to limit the liability of ARUN VELUCHAMY and Relative B for the transfers of property they received from PETHINAIDU VELUCHAMY and PARAMESWARI VELUCHAMY as part of the scheme, including that such transfers were made on account of debts owed.

27.     It was further part of the scheme that ARUN VELUCHAMY made various false representations in the Chapter 11 bankruptcy cases in an attempt to conceal the nature and extent of the scheme, and to limit his liability and the liability of PARAMESWARI VELUCHAMY and Relative B, for transfers of property they received as part of the scheme, including that certain transfers were made on account of debts owed by the businesses that became Chapter 11 debtors.

28.     It was further part of the scheme that, for the purpose of concealing the scheme, in or around April 2012, while a motion to appoint a chapter 11 trustee was pending in the Chapter 11 bankruptcy cases, PARAMESWARI VELUCHAMY caused Individual B and Individual D to gather records for destruction, and caused such records to be destroyed.

29.     It was further part of the scheme that, for the purpose of concealing the scheme, in or around April 2012, while a motion to appoint a Chapter 11 trustee was pending in the Chapter 11 bankruptcy cases, PETHINAIDU VELUCHAMY caused

11

Individual C to gather records from 2009, 2010, and 2011, and to provide such records to Individual F, for removal from the business premises.

      30.    It was further part of the scheme that the defendants and others did misrepresent, conceal, and hide, and caused to be misrepresented, concealed and hidden the true purpose of acts done in furtherance of the scheme.

      31.    On or about July 3, 2009, at Chicago, in the Northern District of Illinois, Eastern Division,

PETHINAIDU VELUCHAMY and
PARAMESWARI VELUCHAMY,

defendants herein, knowingly executed and attempted to execute the scheme to defraud by causing approximately $4,000,000 to be transferred by wire transfer from an account at the State Bank of India, Chicago Branch, to an account subject to their control at Canara Bank, Chennai Branch, India;

      In violation of Title 18, United States Code, Section 1344(1).

12

## COUNT TWO

The SPECIAL JUNE 2015 GRAND JURY further charges:

1.    Paragraphs 1 through 30 of Count One of this superseding indictment are incorporated here.

2.    On or about July 6, 2009, at Chicago, in the Northern District of Illinois, Eastern Division,

PETHINAIDU VELUCHAMY and
PARAMESWARI VELUCHAMY,

defendants herein, knowingly executed and attempted to execute the scheme to defraud by causing approximately $4,000,000 to be transferred by wire transfer from an account at the State Bank of India, Chicago Branch, to an account subject to their control at Canara Bank, Chennai Branch, India;

In violation of Title 18, United States Code, Section 1344(1).

13

## COUNT THREE

The SPECIAL JUNE 2015 GRAND JURY further charges:

1.      Paragraphs 1 through 30 of Count One of this superseding indictment are incorporated here.

2.      On or about July 6, 2010, at Chicago, in the Northern District of Illinois, Eastern Division,

> PETHINAIDU VELUCHAMY,
> PARAMESWARI VELUCHAMY, and
> ARUN VELUCHAMY,

defendants herein, knowingly executed and attempted to execute the scheme to defraud by causing approximately $3,500,000 to be transferred by wire transfer from an account at the State Bank of India, Chicago Branch, to an account subject to the control of PETHINAIDU VELUCHAMY and PARAMESWARI VELUCHAMY at Canara Bank, Chennai Branch, India, with an account number ending in 7809;

In violation of Title 18, United States Code, Section 1344(1).

14

## COUNT FOUR

The SPECIAL JUNE 2015 GRAND JURY further charges:

1.     Paragraphs 1 through 30 of Count One of this superseding indictment are incorporated here.

2.     On or about July 6, 2010, at Chicago, in the Northern District of Illinois, Eastern Division,

PETHINAIDU VELUCHAMY,
PARAMESWARI VELUCHAMY, and
ARUN VELUCHAMY,

defendants herein, knowingly executed and attempted to execute the scheme to defraud by causing approximately $3,500,000 to be transferred by wire transfer from an account at the State Bank of India, Chicago Branch, to an account subject to the control of PETHINAIDU VELUCHAMY and PARAMESWARI VELUCHAMY at Canara Bank, Chennai Branch, India, with an account number ending in 7810;

In violation of Title 18, United States Code, Section 1344(1).

## COUNT FIVE

The SPECIAL JUNE 2015 GRAND JURY further charges:

1.     Paragraphs 1 through 30 of Count One of this superseding indictment are incorporated here.

2.     On or about July 7, 2011, in the Northern District of Illinois, Eastern Division,

ARUN VELUCHAMY,

defendant herein, knowingly executed and attempted to execute the scheme to defraud by causing a check in the approximate amount of $474,320 to be issued for the benefit of PARAMESWARI VELUCHAMY, from the account of an entity subject to defendants' control, when ARUN VELUCHAMY knew such transfer was prohibited;

In violation of Title 18, United States Code, Section 1344(1).

## COUNT SIX

The SPECIAL JUNE 2015 GRAND JURY further charges:

1.     Paragraphs 1 through 30 of Count One of this superseding indictment are incorporated here.

2.     On or about December 1, 2010, in the Northern District of Illinois, Eastern Division,

### PETHINAIDU VELUCHAMY,

defendant herein, knowingly executed and attempted to execute the scheme to defraud by causing Relative C and Relative D to file a complaint commencing a lawsuit against him;

In violation of Title 18, United States Code, Section 1344(1).

17

## COUNT SEVEN

The SPECIAL JUNE 2015 GRAND JURY further charges:

In or around July 2011, in the Northern District of Illinois, Eastern Division,

PETHINAIDU VELUCHAMY, and
PARAMESWARI VELUCHAMY,

defendants herein, knowingly altered, destroyed, mutilated, concealed, and covered up records, documents and tangible objects, namely business records for years prior to 2008, with the intent to impede, obstruct, and influence cases contemplated to be filed under Title 11;

In violation of Title 18, United States Code, Section 1519.

18

## COUNT EIGHT

The SPECIAL JUNE 2015 GRAND JURY further charges:

In or around April 2012, in the Northern District of Illinois, Eastern Division,

PETHINAIDU VELUCHAMY,

defendant herein, knowingly altered, destroyed, mutilated, concealed, and covered up records, documents and tangible objects, namely business records for years 2009, 2010, and 2011, with the intent to impede, obstruct, and influence administration of cases pending under Title 11, including *Qualteq, Inc., et al.*, Lead Case No. 12-05861;

In violation of Title 18, United States Code, Section 1519.

19

## COUNT NINE

The SPECIAL JUNE 2015 GRAND JURY further charges:

In or around April 2012, in the Northern District of Illinois, Eastern Division,

PARAMESWARI VELUCHAMY,

defendant herein, knowingly altered, destroyed, mutilated, concealed, and covered up records, documents and tangible objects, including payroll records and financial records, with the intent to impede, obstruct, and influence administration of cases pending under Title 11, including *Qualteq, Inc., et al.*, Lead Case No. 12-05861;

In violation of Title 18, United States Code, Section 1519.

## COUNT TEN

The SPECIAL JUNE 2015 GRAND JURY further charges:

On or about May 14, 2012, at Chicago, in the Northern District of Illinois, Eastern Division,

### PETHINAIDU VELUCHAMY,

defendant herein, knowingly and fraudulently made a false material statement under oath in and in relation to a case under Title 11, *In re Veluchamy*, Case No. 11 B 33413, by falsely testifying under oath in a meeting of creditors that he was no longer involved in any businesses in India, when, in fact, defendant knew that he remained in control of certain enterprises in India, namely:

Q.    Mr. Veluchamy, have you gotten out of business in India?

A.    Right now, yes.

In violation of Title 18, United States Code, Section 152(2).

21

## COUNT ELEVEN

The SPECIAL JUNE 2015 GRAND JURY further charges:

On or about May 14, 2012, at Chicago, in the Northern District of Illinois, Eastern Division,

### PARAMESWARI VELUCHAMY,

defendant herein, knowingly and fraudulently made a false material statement under oath in and in relation to a case under Title 11, *In re Veluchamy*, Case No. 11 B 33413, by falsely testifying under oath in a meeting of creditors that she and her husband, defendant PENTHINAIDU VELUCHAMY, were no longer involved in any businesses in India, when, in fact, defendant knew that she and her husband remained in control of certain enterprises in India, namely:

> Q.   Mrs. Veluchamy, have you and your husband gotten out of business in India?
>
> A.   Yes.

In violation of Title 18, United States Code, Section 152(2).

22

## COUNT TWELVE

The SPECIAL JUNE 2015 GRAND JURY further charges:

On or about April 23, 2013, at Chicago, in the Northern District of Illinois, Eastern Division,

### PETHINAIDU VELUCHAMY,

defendant herein, knowingly and fraudulently made a false material statement under oath in and in relation to a case under Title 11, *In re Veluchamy*, Case No. 11 B 33413, by falsely testifying under oath that he never worked for Oakbrook Financial or reviewed the financial documents for Oakbrook Financial, when, in fact, defendant knew that he reviewed, drafted, and altered financial statements for Oakbrook Financial, a company that was under his control, namely:

Q. Have you ever done any work for Oak Brook Financial?

A. No.

Q. Have you ever reviewed the financial books or records for Oak Brook Financial?

A. No.

Q. Have you ever reviewed the balance sheets for Oak Brook Financial?

A. No.

In violation of Title 18, United States Code, Section 152(2).

23

## COUNT THIRTEEN

The SPECIAL JUNE 2015 GRAND JURY further charges:

1.     Paragraphs 1(m) and 1(n) of Count One of this superseding indictment are incorporated here.

2.     At times material to this indictment:

    a.     Following the entry of the December 30, 2010, order, the parties engaged in post-judgment proceedings to discover assets that could be used to satisfy the judgments.

    b.     On or about March 15, 2011, Bank of America filed an emergency motion seeking, among other relief, an order compelling PETHINAIDU VELUCHAMY and PARAMESWARI VELUCHAMY to surrender their passports and prohibit international travel.

    c.     On or about March 18, 2011, the District Court entered an order, requiring PETHINAIDU VELUCHAMY and PARMESWARI VELUCHAMY to surrender their passports to the District Court and prohibited international travel.

    d.     On or about March 21, 2011, PETHINAIDU VELUCHAMY's and PARMESWARI VELUCHAMY's passports were delivered to the District Court.

    e.     The District Court denied PETHINAIDU VELUCHAMY's subsequent requests for return of his passport.

    f.     On or about April 20, 2011, the District Court granted PARAMESWARI VELUCHAMY's request for temporary return of her passport for

24

purposes of traveling to India. The District Court's order required re-surrender of the passport to the District Court no later than May 25, 2011.

        g.    On or about May 25, 2011, PARMESWARI VELUCHAMY returned her passport to the District Court.

        h.    The District Court denied PARAMESWARI VELUCHAMY's subsequent requests for return of her passport.

    3.    On or about June 17, 2013, in the Northern District of Illinois, Eastern Division, and elsewhere,

PETHINAIDU VELUCHAMY,

defendant herein, did willfully and knowingly cause a false statement to be made in an application for passport with intent to induce and secure the issuance of a passport under the authority of the United States for his own use, contrary to the laws regulating the issuance of passports and the rules prescribed pursuant to such laws, namely, defendant submitted a Form DS-64, Statement Regarding a Lost or Stolen Passport Book and/or Card, in which defendant attested that his previous passport was "misplaced," when, in fact, as defendant knew, the previous passport was not misplaced but had been ordered surrendered by a court;

    In violation of Title 18, United States Code, Section 1542.

25

## COUNT FOURTEEN

The SPECIAL JUNE 2015 GRAND JURY further charges:

1.     Paragraphs 1 and 2 of Count Thirteen of this superseding indictment are incorporated here.

2.     On or about June 17, 2013, in the Northern District of Illinois, Eastern Division, and elsewhere,

PARAMESWARI VELUCHAMY,

defendant herein, did willfully and knowingly cause a false statement to be made in an application for passport with intent to induce and secure the issuance of a passport under the authority of the United States for her own use, contrary to the laws regulating the issuance of passports and the rules prescribed pursuant to such laws, namely, defendant submitted a Form DS-64, Statement Regarding a Lost or Stolen Passport Book and/or Card, in which defendant attested that she does not "remember where [she] kept [her previous passport]," when, in fact, as defendant knew, the previous passport was not misplaced but had been ordered surrendered by a court;

In violation of Title 18, United States Code, Section 1542.

## **FORFEITURE ALLEGATION**

The SPECIAL JUNE 2015 GRAND JURY alleges:

1.    The allegations of Counts One through Six of this superseding indictment are incorporated here for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(2).

2.    As a result of their violations of Title 18, United States Code, Section 1344(1), as alleged in Counts One through Six of the foregoing superseding indictment,

PETHINAIDU VELUCHAMY,
PARAMESWARI VELUCHAMY, and
ARUN VELUCHAMY,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), any and all right, title and interest they may have in any property, real and personal, which constitutes and is derived from proceeds traceable to the charged offenses.

3.    The interest of the defendants subject to forfeiture as the result of their violations of Title 18, United States Code, Section 1344(1) includes, but is not limited to, approximately $39,000,000.

4.    If any of the property described above, as a result of any act or omission of the defendants:

    a.    Cannot be located upon the exercise of due diligence;

    b.    Has been transferred or sold to, or deposited with, a third person;

    c.    Has been placed beyond the jurisdiction of the Court;

      d.    Has been substantially diminished in value; or

      e.    Has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c) to seek forfeiture of any other property of the defendants up to the value of the forfeitable property.

    All pursuant to Title 18, United States Code, Section 982(a)(2).

A TRUE BILL

_____
FOREPERSON

_____
UNITED STATES ATTORNEY

28